UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

LISA FISHER,                              :
                                          :
            Plaintiff,                    :
                                          :            **DECISION & ORDER**
        v.                                :            14-CV-3461 (WFK)(JO)
                                          :
MERMAID MANOR HOME FOR                    :
ADULTS, LLC,                              :
                                          :
            Defendant.                    :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Following a five-day trial, a jury rendered a unanimous verdict for Lisa Fisher ("Plaintiff"), finding liability against Mermaid Manor Home for Adults, LLC ("Defendant") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII") and the New York City Human Rights Law, New York City Administrative Code § 8-107 *et. seq.* ("NYCHRL"). The jury granted Plaintiff $25,000.00 in actual damages and $250,000.00 in punitive damages. Defendant now brings a renewed motion for judgment as a matter of law or, in the alternative, motion for new trial. The Court denies Defendant's renewed motion for judgment as a matter of law, and grants in part and denies in part Defendant's motion for new trial.

## BACKGROUND

This employment-discrimination case under Title VII and NYCHRL began with an

Instagram photo comparing Plaintiff, an African American Home Health Aid, to a fictional

chimpanzee from the movie *Planet of the Apes*. A jury verdict found Defendant liable for hostile

work environment under Title VII, retaliatory hostile work environment under Title VII, and

retaliatory hostile work environment under NYCHRL. Jury Verdict, ECF No. 94. The jury

awarded Plaintiff $25,000.00 in actual damages and $250,000.00 in punitive damages. *Id.* at 6.

Defendant brings a renewed motion for judgment as a matter of law pursuant to Federal

Rule of Civil Procedure 50(b) or, in the alternative, a motion for new trial pursuant to Federal

1

Rule of Civil Procedure 59. Mot., ECF No. 100. The Court assumes the parties' familiarity with the underlying facts of this case and the Court's previous opinions.

Defendant's renewed motion for judgment as a matter of law is DENIED. Defendant's motion for new trial is GRANTED in part and DENIED in part.

## DISCUSSION

I. **Legal Standard**

### A. Renewed Motion for Judgment as a Matter of Law

When evaluating a motion for judgment as a matter of law, a court is required to draw all reasonable inferences in favor of the non-moving party. *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007). The court "may not make credibility determinations or weigh the evidence," because those are "jury functions, not those of a judge." *Id.* Accordingly, a court may grant a motion for judgment as a matter of law "only if it can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been *compelled* to accept the view of the moving party." *Id.* at 370–71; *accord MacDermid Printing Solutions LLC v. Cortron Corporation*, 2016 WL 4204795, at *3 (2d Cir. Aug. 10, 2016) (citing *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011)). This "high bar" may be met when there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture" or "there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." *Advance Pharm., Inc. v. United States*, 391 F.3d 377, 390 (2d Cir. 2004); *Lavin–McEleney v. Marist College*, 239 F.3d 476, 479–80 (2d Cir. 2001).

## B. Motion for a New Trial

A court may grant a new trial in a jury case for any of the reasons "for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). The decision whether to grant a new trial under Rule 59 is "committed to the sound discretion of the trial judge." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992). Thus, "[a] new trial may be granted . . . when the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998).

In contrast to a motion for judgment as a matter of law, a court may grant a motion for a new trial "even if there is substantial evidence supporting the jury's verdict." *Id.* at 134. Additionally, "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *Id.* (citing *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)). A court considering a Rule 59 motion for a new trial, however, "must bear in mind . . . that the court should only grant such a motion when the jury's verdict is 'egregious.'" *Id.* For this reason, "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (quoting *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir. 1998)); *see also Patrolmen's Benevolent Ass'n of N.Y.C. v. City of New York*, 310 F.3d 43, 54 (2d Cir. 2002). Furthermore, "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Metromedia Co.*, 983 F.2d at 363; *see also DLC Mgmt. Corp.*, 163 F.3d at 134 ("[A] court should rarely disturb a jury's evaluation of a witness's credibility.").

## II. Analysis

Defendant seeks judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure on three grounds: (1) failure to exhaust Plaintiff's national origin claims, (2) failure to prove a hostile work environment, and (3) failure to prove a retaliatory hostile work environment. The Court DENIES Defendant's Rule 50(b) motion in its entirety. Defendant also seeks a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure on four grounds: (1) excessive punitive damages, (2) prejudicial error in the Court's jury instructions, (3) an irreconcilably inconsistent verdict, and (4) prejudicial error in the Court's denial of Defendant's proposed deposition designations. The Court GRANTS IN PART AND DENIES IN PART Defendant's Rule 59 motion.

### A. Renewed Motion for Judgement as a Matter of Law

#### 1. Exhaustion

As a "jurisdictional prerequisite" to a Title VII claim in federal court, "an individual must first present 'the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (per curiam) (citing 42 U.S.C. § 2000e-5). Defendant asserts once more that Plaintiff failed to exhaust her national origin claim with the EEOC, reiterates the distinction between race and national origin, and relitigates the scope of the EEOC charge as limited to race and not extending to national origin. Mot. at 2–6. The Court twice rejected Defendant's failure-to-exhaust argument.[1] *See, e.g.*, Summ. J. at 4–5, ECF No. 75 (finding Plaintiff's national origin claim "reasonably

---

[1] *Littlejohn v. City of New York*, 795 F.3d 297, 321–24 (2d Cir. 2015), addresses the very different relationship between race/color and sex.

related" to her race claim and refusing to disentangle the two). The Court again holds Plaintiff exhausted her administrative remedies with respect to her national origin claim.

### 2. Hostile Work Environment

Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Defendant brings a renewed motion for judgment as a matter of law in regards to Plaintiff's hostile work environment claim. Mot. at 6–12.

#### a. Discrimination on the Basis of National Origin

Defendant claims Plaintiff failed to "introduce any evidence which would meet her burden to establish discrimination *on the basis of her national origin.*" *Id.* at 6. Defendant describes the harassment towards Plaintiff to be either racial in nature or simply a neutral attack on Plaintiff as a person, *i.e.*, neither because of race nor because of national origin. *Id.* at 6–8. For example, Defendant attempts to conceal the damage caused by the Instagram photo, which compared Plaintiff to a fictional chimpanzee from *The Planet of the Apes*, by declaring the photo "*race-based*, [having] nothing to do with Plaintiff's national origin." *Id.* at 6–7.

As with Defendant's exhaustion argument, *supra* at 4–5, Defendant attempts to draw a distinction where none exists. The question of whether the harassment Plaintiff suffered was because of her national origin or simply because her co-workers disliked her was a factual question resolved by a jury, and not a question to be relitigated in post-trial motions. *See Feingold v. New York*, 366 F.3d 138, 151 (2d Cir. 2004) (finding that whether harassment was caused by religion-based animus or some other motivation not prohibited by law to be a question for the jury, not for a

court at summary judgment). Viewed in the light most favorable to Plaintiff, the jury found, and this Court finds, that Ms. Yvonne Kelly, a black Jamaican co-worker, and Ms. Lisi Laurent, a black Haitian co-worker, posted the Instagram photo because of Plaintiff's national origin.

The Court does not make this finding based merely on the fact that Plaintiff and her two co-workers are of different national origins. The focus of Title VII is individualize to the person and does not require harm to a group of individuals based on some characteristic, such as national origin. *See Brown v. Henderson*, 257 F.3d 246, 253–54 (2d Cir. 2001) ("In other words, what matters in the end is not how the employer treated *other* employees, if any, of a different sex, but how the employer *would have* treated *the plaintiff* had she been of a different sex." (citing *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158 (7th Cir. 1996)). In this case, the harassment of Plaintiff was because of her national origin. The fact that identical harassment suffered by employees in another hypothetical case may be "neutral" is irrelevant. *See id.* at 253 (describing "Title VII's touchstone" as analyzing the use of a protected characteristic, such as sex, race, and national origin, as relating to the individual and not as a "part of a broader discriminatory pattern").

### b. Imputing Liability

Plaintiff was subjected to a hostile work environment by her co-worker. As a result, Plaintiff must "demonstrate a specific basis for imputing the conduct creating the hostile work environment to the employer." *Feingold*, 366 F.3d at 149–50, 152. "When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Id.* at 152 (citing *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir. 1994))). "[W]hen the harassment is attributable to a coworker, rather than a supervisor, . . . the employer will be held

6

liable only for its own negligence." *Distasio v. Perkins Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998).

Defendant argues Plaintiff cannot impute liability. Mot. at 10–12. Defendant claims it provided Plaintiff with a reasonable avenue for complaint and, thus, cannot be subject to liability. Mot. at 10. Defendant cites to *Chenette v. Kenneth Cole Prods., Inc.*, 345 F. App'x 615, 619 (2d Cir. 2009), in support of its conclusion that Plaintiff had no basis for imputing liability to Defendant. Mot. at 12.

In *Chenette*, a Korean woman filed an employment discrimination suit against her employer for a "Kissing Incident" perpetrated by a female co-worker. *Id.* at 617–18. The Court of Appeals for the Second Circuit affirmed Judge Cote's holding that the employer "exercised reasonable care in attempting to eliminate the conditions of which [the plaintiff] complains" and upheld Judge Cote's dismissal of the hostile work environment claim. *Id.* at 620. Specifically, the employer in *Chennette* "conducted an investigation, and a meeting of the Department was held to discuss proper deportment in the workplace; . . . [the complained of co-worker] was disciplined for the Kissing Incident . . . ; and . . . [the defendant] conducted a formal interview of [the plaintiff] in response of her threat of a lawsuit." *Id.*

Similarly, here, Defendant immediately investigated the Instagram photo, conducted an in-service training regarding its anti-harassment policy, spoke with Ms. Kelly, and issued an oral reprimand to Ms. Laurent. Mot. at 11; *see also id.* at 11–12 (listing examples of remedial actions taken by Defendant). Here, unlike in *Chennette*, Defendant did not exercise reasonable care in attempt to eliminate the conditions of which Plaintiff complained. Defendant focuses too heavily on the Instagram photo and relies too much on the fact that "another similar photograph of Plaintiff was *never* thereafter posted on Instagram." Mot. at 11. As became clear during trial, the

Instagram photo was merely a symptom of the hostile work environment created by Defendant, and treatment of the symptom failed to cure the disease: "hostility" between African American and Caribbean workers. Tr. Trans. 116:10–13, 116:22–25. In other words, Defendant overlooks the appropriateness of its remedial action. *See Duch v. Jakubek*, 588 F.3d 757, 763 (2d Cir. 2009) ("Despite offering a reasonable avenue of complaint to plaintiff, employer defendants can still be held liable if plaintiff can show that they 'knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'" (quoting *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (internal quotation marks omitted))); *Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004) ("[A]n employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action."). Even with actual knowledge of a hostile work environment, Defendant did nothing to lessen the hostility between the "coconuts" and the African Americans. *See* Tr. Trans. 228:6–12 ("[W]hen I[, Ms. Kelly] started working [at Mermaid Manor] I heard they had two sides. You have the coconut. I said what is [a] coconut, they said those are the people that are the immigrants [from the Caribbean and West Indies."); *id.* at 119:23–120:3 (reporting when Plaintiff learned of the term "coconuts"). This is supported by the numerous complaints made and recorded by Plaintiff regarding her continued harassment. *See* Opp. at 11–13, ECF No. 108 (collecting the iPhone recordings).

* * *

For these reasons, the Court finds sufficient evidence to support the jury's finding of a hostile work environment.

### 3. Retaliatory Hostile Work Environment

"The test for 'hostile work environment' has both an objective and a subjective component: 'A work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it.'" *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58 (2d Cir. 2004) (quoting *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)).

Defendant does not dispute Plaintiff's subjective belief that a hostile work environment existed, but claims Plaintiff suffered no objectively adverse action. Mot. at 13. Defendant argues the retaliatory co-worker harassment faced by Plaintiff was not sufficiently "severe" and "unchecked," and merely constituted "petty slights and minor annoyances." *Id.*

In determining whether a reasonable person would perceive a work environment as hostile depends upon the totality of the circumstances, with "considerations includ[ing]: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance." *Brennan*, 192 F.3d at 319 (citing *Harris*, 510 U.S. at 23).

"Context matters." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006). "[T]he significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* Following the Instagram incident, Defendant's acquiescence with Ms. Kelly, the co-worker who seemed to ridicule Plaintiff continuously and unrelentingly, served to condone Ms. Kelly's harassment. Among other acts of harassment, Ms. Kelly ripped up Plaintiff's patient book, Tr. Trans. 131:4–6; destroyed the beds of Plaintiff's patients, *id.* at 130:13–22; laughed at Plaintiff in front of other co-workers, *id.* at 131:10–13; swung her arms in attempt to bump Plaintiff in the hallway, *id.* at 133:1–6; and, on one occasion, after seeing Plaintiff in a room, asked in an unpleasant manner, "Do you smell that?," *id.* at 133:11–19. This conduct, while arguably

minor annoyances when viewed by themselves in isolation, are sufficient to create a retaliatory hostile work environment when viewed in the totality of the circumstances and in the light most favorable to Plaintiff. Plaintiff regularly, and unsuccessfully, reported Ms. Kelly's conduct to Defendant, but to no avail. Defendant, despite having actual knowledge of these numerous incidents, took no meaningful action to protect Plaintiff and to rectify the hostile work environment that resulted from Ms. Kelly's unceasing harassment.[2] *See, e.g.*, Tr. Trans. 120:15–16 ("[Plaintiff] complained to [Ms. Lorraine Branch, a manager,] about not being treated the same and she told me that it's not true."); Opp. at 11–13 (collecting complaints by Plaintiff, including an incident where Plaintiff and Ms. Kelly shared a room).

Accordingly, the Court finds sufficient evidence to support Plaintiff's claim of retaliatory hostile work environment.

### B. Defendant's Motion for New Trial

#### 1. Punitive Damages

"[T]he purpose of punitive damage awards is to punish the defendant and to deter him and others from similar conduct in the future." *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992). "The showing required for an award of punitive damages is not the same as that required for liability. Rather, punitive damages may be awarded for claims of employment discrimination only where the employer 'engaged in a discriminatory practice or discriminatory practices *with malice or reckless indifference* to the federally protected rights of an aggrieved individual.'" *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 115 (2d Cir. 2015) (quoting 42 U.S.C. § 1981a(b)(1)). "[A]n

---

[2] Similarly, the Court finds no merit to Defendant's argument that the jury granted Plaintiff recovery under two legal theories for the same injury. *See* Mot. at 14–15. Defendant's failure to reasonably respond to the harassment by Ms. Kelly, however, is distinct from Defendant's treatment of the Instagram incident. Defendants remaining arguments are also without merit. *See* Mot. at 15–16 (claiming a lack of temporal specificity precludes Plaintiff from recovery).

award of punitive damages is reversed only when it is 'so high as to shock the judicial conscience and constitute a denial of justice.'" *Hughes v. Patrolmen's Benev. Ass'n of City of N.Y., Inc.*, 850 F.2d 876, 883 (2d Cir. 1988) (quoting *Zarcone v. Perry*, 572 F.2d 52, 56–57 (2d Cir. 1978)).

"The Supreme Court has identified three 'guideposts' for determining whether punitive damages are excessive: (1) the degree of reprehensibility; (2) the ratio of the harm or potential harm suffered due to the defendant's conduct and the punitive damages awarded; and (3) the difference between the remedy and any civil penalties authorized or imposed in comparable cases. *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 588 (S.D.N.Y. 2010) (Gardephe, J.); *see also BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574–75 (1996); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007).

### a. Reprehensibility

The first guidepost provided by the Supreme Court is the degree of reprehensibility. Defendant argues it did not act reprehensibly. Defendant claims its good faith efforts at compliance preclude an award of punitive damages. Mot. at 17–20. Defendant points to various facts in its favor. *Id.* at 19. In particular, this case presents the first discrimination complaint against Defendant, Tr. Trans. at 453; Defendant had in place an antidiscrimination policy, *id.* at 456–57; Defendant held an in-service training to review the antidiscrimination policy after the Instagram incident, *id.* at 458, 463–65; Defendant investigated the Instagram incident through meetings, *id.* at 466–68; and Defendant orally reprimanded the co-worker who admitted to posting the Instagram photo, *id.* at 471.

Plaintiff responds by pointing to acts by Defendant that support an award of punitive damages. Opp. at 21–23. Because Plaintiff repeatedly complained about verbal and physical

harassment, Defendant knew the harassment would continue if it failed to act. Accordingly, Defendant's failure to meaningfully respond to Plaintiff's complaints demonstrates reckless indifference to Plaintiff's federally protected rights.

The Court instructed the jury that punitive damages could not be awarded if "Defendant itself made a good-faith effort to comply with the law prohibiting discrimination." Jury Charge at 36, ECF No. 92. The jury, in deciding to award punitive damages, found that Defendant failed to make a good-faith effort at compliance, and the Court finds sufficient evidence to support the jury's finding of punitive damages. Defendant's argument focuses almost exclusively on its response to the Instagram incident, but ignores the continued harassment after the incident. Plaintiff's complaints following the Instagram incident were largely ignored. *See, e.g.*, Pl. Tr. Ex. 9, section 8:10–10:35 ("I'm not getting any help here! Nobody is helping me!"); *id.* Ex. 12, section 7:00–8:30 ("I'm yelling because ain't nobody helping me in here! You're not helping me! Every time I come in here you're not helping me!"). Instead of addressing Plaintiff's repeated complaints and pleas for help, Defendant patronized Plaintiff. *See, e.g.*, *id.* Ex. 8, section 12:40–15:32 ("How do you [Plaintiff] define 'harassing'?"); *id.* ("I don't understand racism or prejudice"); *id.* Ex. 13, section 11:19–12:16 ("That, you'll have to take up with your lawyer."). Defendant consistently viewed the harassment suffered by Plaintiff to be minor nuisances and permitted Ms. Kelly to continue her harassment, destroying Plaintiff's dignity and eroding Plaintiff's ability to continue working.

The Court does not alter the jury's "discretionary moral judgment" to grant punitive damages. *Smith v. Wade*, 461 U.S. 30, 52 (1983); *see also id.* at 54 ("Punitive damages are awarded in the jury's discretion to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future." (internal quotation marks and citations

12

omitted)).  The jury found compensatory damages insufficient to punish Defendant for its conduct, or lack thereof conduct, and awarded punitive damages to deter Defendant and others like Defendant from similar future conduct, or lack thereof conduct.  Jury Instructions at 37, ECF No. 92 (providing instruction to the jury that punitive damages may be awarded if "appropriate to punish the Defendant or to deter the Defendant and others from like conduct in the future"); *see also Smith*, 461 U.S. at 54–55 ("[S]ociety has an interest in deterring and punishing all intentional or reckless invasions of the rights of others, even though it sometimes chooses not to impose any liability for lesser degrees of fault.").

### b. Compensatory Damages to Punitive Damages

The second *Gore* guidepost is the ratio of the harm or potential harm suffered due to the defendant's conduct and the punitive damages awarded, in other words, the ratio of compensatory to punitive damages.  The jury awarded Plaintiff $25,000.00 in compensatory damages and $250,000.00 in punitive damages.  Jury Verdict at 6.

Defendant argues the ten-to-one ratio of punitive damages to compensatory damages is excessive and cites to a number of cases by courts in the Second Circuit to support a lesser ratio. Mot. at 20–21.  Plaintiff responds by arguing the absence of any bright-line rule prohibiting a double-digit ratio of punitive damages to compensatory damages.  Opp. at 24–25.

### c. Civil Penalties

The final guidepost of *Gore* instructs the Court to consider any civil penalties authorized or imposed in comparable cases.  Defendant provides three baselines.  First, the maximum civil fines permitted under the NYCHRL is $250,000.00 for discriminatory practices that are "willful, wanton or malicious."  Mot. at 21 (citing *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 149 (2d Cir. 2010)). Second, the maximum civil fine permitted under the NYCHRL is $125,000.00 for discriminatory

practices without evidence of "willful, wanton, or malicious behavior." *Id.* (citing N.Y.C. Admin. Code § 8-126(a)). Third, the maximum recovery permitted under Title VII for compensatory and punitive damages in cases against Defendants with fewer than 101 employees (Defendant has approximately sixty-five employees) is $50,000.00. *Id.* (citing 42 U.S.C. § 1981a(b)(3)(A) (limiting recovery for cases seeking "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses")).

The Court instructed the jury that punitive damages could be awarded if "Defendant acted with malice or with reckless and/or callous indifference." Jury Charge at 26. Accordingly, only two baselines figures are relevant in this case—$250,000.00 under the NYCHRL and $50,000.00 under Title VII.

* * *

Upon review of the cases in the Second Circuit, the jury's award of a ten-to-one punitive damages ratio shocks the judicial conscious. While Defendant acted reprehensibly, the disparity between the compensatory damages and punitive damages awarded to Plaintiff is inappropriate. Here, Plaintiff sought "solely compensatory damages for alleged emotion distress," Ct. Ex. 3A, and the jury award of $25,000.00 for emotional distress is sizeable when compared to the $50,000.00 cap provided for compensatory *and* punitive damages allowed under Title VII. As stated by the Court of Appeals for the Second Circuit, "Where the compensatory award is particularly high, . . . a four-to-one ratio of punishment to compensation, in our view, serves neither predictability nor proportionality." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 165 (2d Cir. 2014). This is even more so here, where the sizeable compensatory damages is amplified by a ten-to-one ratio of punishment to compensation.

The Court finds a two-to-one ratio of punitive damages to compensatory damages appropriate in this case.[3] *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 425 ("Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."); *Turley*, 774 F.3d at 166 (concluding, in a Title VII, New York Human Rights Law, and intentional infliction of emotional distress case, that "a roughly 2:1 ratio of punitive damages to what, by its nature, is necessarily a largely arbitrary compensatory award, constitutes the maximum allowable in these circumstances"); *Thomas*, 652 F.3d at 149–50 ("On balance, the moderate level of reprehensibility of [the defendant's] conduct, the large compensatory damages award, and the relevant case law lead us to agree with the district court that the jury's original punitive damages award of $1.6 million was excessive," and affirming the district court's remittitur to $190,000.00). Accordingly, remittitur is appropriate, and the Court reduces the punitive damages award of $250,000.00 to $50,000.00.

### 2. Jury Charge

Defendant points to numerous portions of the jury charge, claiming these portions to be in error and requiring a new trial.

*First*, Defendant claims the Court improperly instructed the jury on the burden of proof. Mot. at 23–24. Specifically, Defendant cites to the instructions addressing Defendant's affirmative defense, which provided:

> The Defendant contends that, even if the plaintiff was, in fact, subjected to discrimination, the Defendant took prompt remedial action. This is an affirmative defense as to which the Defendant bears the burden of proof. Specifically, your verdict must be for the Defendant on the Plaintiff's claim of discrimination if the

---

[3] Plaintiff's reliance on *Lee v. Edwards*, 101 F.3d 805 (2d Cir. 1996), is inapposite. In *Lee*, the jury awarded "$1 nominal damages." *Id.* at 807. Here, the jury did not grant nominal damages. Jury Verdict at 6.

Defendant proves by a preponderance of the evidence that, A, the Defendant exercised reasonable care to prevent and promptly correct any discriminatory behavior directed against the Plaintiff; and B, the Plaintiff unreasonably failed to take advantage of corrective opportunities provided by the Defendant.

Tr. Trans. at 719.

Defendant is mistaken. The instruction properly places the burden of proof on Defendant for an affirmative defense. Indeed, the instruction is borrowed, nearly verbatim, from the Modern Federal Jury Instructions. 5-88 Modern Federal Jury Instructions-Civil P 88.03; *see also Pennsylvania State Police v. Suders*, 542 U.S. 129, 146 (2004); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

*Second*, Defendant argues the Court improperly denied its request for additional language instructing the jury on mitigating considerations for punitive damages under NYCHRL. Mot. at 24–26. Defendant's specious argument derives from language carefully annotated from the New York City Administrative Code. *Id.* at 25. Defendant states, "Specifically, the NYCHRL provides the following factors '*shall* be considered . . . in mitigation of . . . punitive damages,'" and goes on to list the mitigating factors. *Id.* (quoting N.Y.C. Admin. Code § 8-107(13)(d), (e) (emphasis added)). The code, however, reads in full, "Where liability of an employer has been established pursuant to this section and is based solely on the conduct of an employee, agent, or independent contractor, the employer shall be permitted to plead and prove that prior to the discriminatory conduct for which it was found liable[.]" N.Y.C. Admin. Code § 8-107(13)(d). Indeed, none of the cases cited by Defendant in support of its argument require this Court to provide the instruction requested by Defendant. *See Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 579 (S.D.N.Y. 2011) (Marrero, J.) (mentioning an instruction regarding mitigating factors was given but not required); *Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 480 (2010) (providing a "side-

16

by-side comparison" of "a major overhaul of the NYCHRL," but not requiring such mitigating factors to be given to a jury). The Court is not aware of any such requirement.

The Court did not prevent Defendant from presenting evidence of mitigating factors, and Defendant did present such evidence. Accordingly, the Court properly exercised its discretion in precluding Defendant's requested instruction.

*Third*, Defendant takes issue with the Court's instruction regarding an element of Plaintiff's Title VII hostile work environment claim. Mot. at 27. The specific language at issue reads, in relevant part, "Plaintiff must prove by a preponderance of the credible evidence . . . that the abusive conduct was motivated, *at least in part*, by the Plaintiff's national origin." Tr. Trans. at 714 (emphasis added). Defendant argues the "at least in part" language improperly "lowered" Plaintiff's burden of proof. Mot. at 27. The Court finds otherwise.

Defendant's argument proceeds as follows. Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . *because of* such individual's . . . national origin." *Id.* (quoting 42 U.S.C. § 2000e-2(a)(1) (emphasis added)). Title VII employs a "motivating factor" test. *Id.* (quoting 42 U.S.C. § 2000e-2(m)). The "at least in part" language, according to Defendant, does not properly instruct the jury as to the "appropriate degree" of influence required under Title VII. *Id.* at 27–28. In short, Defendant argues the Court should have given more in regards to the causation element of Title VII. *See id.* at 28–29 (citing cases providing the jury with further information regarding the motivating factor test).

The Court's jury instruction, however, was proper and not in error. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) ("As we have long recognized, the 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving

that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason." (quoting *Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997) (internal quotation marks omitted)); *see also* 5-88 Modern Federal Jury Instructions-Civil P 88.03 (providing, as a model federal jury instruction, "the abusive conduct was motivated, at least in part, by the plaintiff's (race, gender, religion, national origin, etc.)").

*Fourth*, Defendant challenges the Court's decision not to provide an instruction to the jury limiting the use of events prior to April 2013. Mot. at 29–30. Defendant argues this failure effectively lowered Plaintiff's burden of proof. *Id.* at 30. The Court finds no basis for finding error in its decision not to provide Defendant's requested language to the jury. The cases cited by Defendant do not require the contrary. *See Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008) (dealing with "a single act of discrimination" with no implication of retaliatory motive); *Chin v. Port Auth. of N.Y. & New Jersey*, 685 F.3d 135, 159 (2d Cir. 2012) (addressing a "hypothetical promotion date outside the statute of limitations"); *Agristor Leasing v. Saylor*, 803 F.2d 1401, 1405–06 (6th Cir. 1986) (finding a new trial appropriate because the district court erred in not submitting issues dealing with the three-year statute of limitations to the jury in interrogatories).

*Fifth*, Defendant claims the Court erred in not providing instruction to the jury that Plaintiff's subjective belief of being discriminated against because of her national origin does not satisfy her burden of proof. Mot. at 30–31. As described above, Plaintiff provided sufficient evidence to support both a subjective belief and objective belief of a hostile work environment. *See supra* at 9–10; *see also Wright v. Illinois Dep't of Children & Family Servs.*, 798 F.3d 513, 527 (7th Cir. 2015) (affirming the district court's grant of a new trial because the jury instruction focused on the "reasonabl[e] belie[fs]" of plaintiff, and did not instruct the jury on the "reasonable

employee" standard). Defendant has provided no case requiring its suggested jury instruction. The Court's refusal to provide Defendant with an instruction regarding Plaintiff's subjective belief was not error.

* * *

Because the Court finds no error in any of the instructions provided to the jury, the Court DENIES Defendant's motion for a new trial based upon alleged error in the jury instruction. *See* Mot. at 31 (alleging the cumulative effect of all errors in the jury instruction require a new trial).

### 3. Inconsistent Verdict

Defendant claims the jury returned two inconsistent verdicts, each of which require a new trial. Mot. at 31–33. The Court finds the jury's responses are not irreconcilably inconsistent.

First, the jury found Plaintiff liable for retaliatory hostile work environment under NYCHRL, but found no liability for hostile work environment under NYCHRL. *Id.* at 32 Because a hostile work environment is a prerequisite to retaliatory hostile work environment, Defendant claims an inconsistent verdict. Mot. at 31–33.

The Second Circuit case of *Cash v. County of Erie* is instructive. 654 F.3d 324 (2d Cir. 2011). In *Cash*, the jury found a former county sheriff, Gallivan, "not negligent" but also found Gallivan "deliberately indifferent." *Id.* at 343. Importantly, the jury was instruction that "[m]ere negligence is not enough" to support a finding of deliberate indifference. *Id.* In other words, Gallivan must necessarily be negligent in order to be deliberately indifferent. Nevertheless, the Court of Appeals for the Second Circuit identified "no irreconcilable inconsistency raising Seventh Amendment concerns." *Id.* "A failure to understand that the higher standard necessarily subsumes the lower may have inured to [the county sheriff's] benefit on the negligence claim, but it did not produce irreconcilably inconsistent verdicts." *Id.* at 343–44.

19

A similar situation occurred here. The jury could have rationally concluded that Defendant could not have created both a hostile work environment and a retaliatory hostile work environment through the same action. Thus, the jury's failure to understand that a retaliatory hostile work environment necessarily subsumes a hostile work environment may have inured to Defendant's benefit on the hostile work environment claim, but it did not produce irreconcilably inconsistent verdicts. *See id.*

Second, the jury found Defendant liable for Plaintiff's hostile work environment under Title VII, but found no liability for Plaintiff's hostile work environment under NYCHRL. Jury Verdict at 1–3. Because NYCHRL is interpreted more liberally than Title VII, Defendant claims an inconsistent verdict. Mot. at 32. As explained above, however, the jury may well have concluded that their finding of a retaliatory hostile work environment precluded them from finding a hostile work environment under NYCHRL.

Accordingly, the Court finds the jury produced no irreconcilably inconsistent verdicts.

## 4. Deposition Designation

Finally, Defendant asserts the Court improperly "refused to permit Defendant to introduce into evidence Plaintiff's deposition designations as part of the Defendant's case-in-chief." Mot. at 33. The Court denied Defendant's motion for reconsideration on this issue during trial, ECF No. 88, and again denies Defendant's arguments on this motion for new trial.

In any event, any error would be harmless, because Defendant has no right to provide the jury in its case-in-chief with an opportunity to "assess Plaintiff's credibility by observing Plaintiff's demeanor and tone at her deposition, *i.e.*, outside of the view of the jury." Mot. at 35. Defendant was free to call Plaintiff to the stand in Defendant's case-in-chief. Defendant could then have presented the deposition designations as impeachment evidence. This is particularly relevant here,

where the sole purpose of the proposed deposition designations was to impeach Plaintiff's credibility.

Defendant's reliance on *Olden v. Kentucky*, 488 U.S. 227, 232 (1988), is inapposite in this civil action. *Olden* dealt with the Sixth Amendment right to confrontation and a criminal defendant's right to effective cross-examination of a live witness. *Id.* at 231–32. No such concerns apply here.

The Court properly exercised its discretion under Federal Rule of Evidence 403 to exclude the proposed deposition designations.

## CONCLUSION

The Court denies Defendant's renewed motion for judgment as a matter of law, and grants in part and denies in part Defendant's motion for new trial. The Court finds remittitur appropriate and reduces punitive damages to $50,000.00. The Court DENIES the remainder of Defendant's motions.

**SO ORDERED.**

s/ WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: December 16, 2016
 Brooklyn, New York